NOT FOR PUBLICATION                           [Doc. No. 13]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| MZL CAPITAL HOLDINGS, INC., on behalf of themselves and all others similarly situated,<br>    Plaintiffs,<br><br><br>        v.<br><br><br><br>TD BANK, N.A. and UNIDENTIFIED ENTITIES (A-Z),<br>    Defendants. | 14-cv-05772 (RMB/AMD)<br><br>**OPINION** |

**Appearances:**

Bruce H. Nagel
Andrew I. Pepper
Nagel Rice, LLP
103 Eisenhower Parkway
Suite 103
Roseland, NJ 07068
    Attorneys for Plaintiffs

James S. Richter
Jeffrey P. Catenacci
Winston & Strawn LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, NJ 07102
    Attorneys for Defendant, TD Bank, N.A.


**BUMB,** United States District Judge:

    This matter comes before the Court upon a motion by

Defendant TD Bank, N.A. ("Defendant") to dismiss Plaintiff, MZL

1

Capital Holdings, Inc.'s ("Plaintiff") putative class action Complaint. For the reasons set forth below, this Court will grant the motion to dismiss, but will provide Plaintiff with an opportunity to file an amended complaint consistent with the Opinion below.

**I.    Factual Background[1]**

Plaintiff MZL, a New York entity, holds a commercial checking account with TD Bank, a New Jersey corporation. Compl. at ¶ 15. Plaintiff brings this putative class action on behalf of itself and all others similarly situated. Compl. at ¶ 2. Many TD Bank commercial business customers engage in international transactions involving the sending or receipt of wired currency from other countries. Compl. at ¶ 10.  The parties' relationship is governed by the Business Deposit Account Agreement ("Agreement"), which states with respect to such transactions: "Items sent for collection will be credited to your Account in U.S. dollars, with the amount of U.S. dollars credited calculated <u>using our applicable exchange rate that is in effect on the date when we credit the funds</u> to your Account . . . ."

---

[1] This Court will accept the Plaintiff's well-pled allegations as true for purposes of this motion to dismiss. <u>See</u> <u>Bistrian v. Levi</u>, 696 F.3d 352 (3d Cir. 2012).

Cantenacci Decl. at Ex. B, Business Deposit Account Agreement at p. 6. (emphasis added).[2]

According to Plaintiff, on or about January 29, 2014, MZL received a wire transfer from London, England in the amount of £70,000.00. Compl. at ¶ 16. The amount credited to Plaintiff's account was $93,282.00. Id. Defendant sent a notice, which referenced what appeared to be an exchange rate of 1.3355. Id. However, Plaintiff contends that the exchange rate appearing in the Wall Street Journal for January 30, 2014 was 1.3664. Id.

According to Plaintiff, on or about February 10, 2014, Alex Dorian ("Dorian"), called TD Bank and made inquiries about what appeared to be an incorrect exchange rate. Compl. at ¶ 17. A representative from TD Bank responded on February 11, 2014 notifying Plaintiff that Defendant would make an adjustment to

---

[2] On a motion to dismiss, only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright & Miller, Fed. Prac. & Proc.: Civil 2d § 1357; Chester Cty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). An "extraneous" document may be considered if it is "'integral to or explicitly relied upon in the complaint[.]'" In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Clearly, the Agreement is integral to the Plaintiff's Complaint in the instant case. See Pl.'s Br. at 2 (noting that Plaintiff signed a New Business Account Agreement with Defendant "which in turn incorporated the terms contained in the Banks' Deposit Account Agreement . . . .").

the account. Id. Thereafter, a credit appeared in Plaintiff's account in the amount of $250.00. Compl. at ¶ 18.

Plaintiff further alleges that on or about February 13, 2014, Dorian received a letter from Defendant indicating that Defendant acted not as an agent but as a principal in buying and selling foreign currency. Compl. at ¶ 19. As such, the letter continued to explain that TD Bank set its rates, including the rate it applied to the January 29th transaction, based on numerous criteria that did not represent the actual cost of converting the currency given the risk that TD Bank assumes when engaging in a foreign exchange transaction. Id. However, Plaintiff claims, at that point, Defendant still did not disclose the actual amount of the "fee." Id. Plaintiff asserts that given the exchange rate reported in the Wall Street Journal, Defendant's use of its own rate resulted in an illegal surplus for Defendant. Compl. at ¶ 20.

Plaintiff's Complaint alleges that TD Bank fails to disclose to its customers a fee that it charges for the conversion of foreign currency and misleads the customer by concealing this charge. Compl. at ¶¶ 11-12. It is alleged that when executing a retail foreign currency conversion transaction (an "FX transaction"), Defendant levies an undisclosed "fee" by adding a markup, and charging its customers more than the

4

Defendant paid for executing the conversion in the wholesale currency market (an "FX conversion fee"). Compl. at ¶ 10 & 11.

Plaintiff further contends that by failing to disclose this "fee," it prevents consumers from making informed decisions with adequate information. Compl. at ¶ 13. According to the Complaint, "the foreign transaction fee is designed and implemented so that it will be paid by, but concealed from the Bank customer." Id.

Based on these allegations, Plaintiff's Complaint sets forth several counts: (1) a violation of the New Jersey Consumer Fraud Act ("NJCFA"); (2) unjust enrichment; (3) violation of Regulation E, 12 C.F.R. § 205.10(b) and the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693, et seq.; (4) breach of contract; and (5) violation of 48 other states' (and the District of Columbia's) consumer protection laws.[3] Plaintiff seeks to enjoin the alleged unlawful practices and acts of Defendant, recover Plaintiff's actual damages, treble damages and attorney's fees. Compl. at ¶ 20.

## II.  Standard of Review

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient

---

[3] Under Count V, Plaintiff provides a string cite to these other 48 laws.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352 n.1 (3d Cir. 2012). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)(citing Chester County

6

Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812
(3d Cir. 1990)).

### III. Analysis

#### a. Fraud Claim

##### i.   Choice of Law

With respect to Plaintiff's fraud claim, the parties
dispute whether New Jersey or New York law applies.  Plaintiff
contends that New Jersey law applies and that it is premature to
engage in a choice of law analysis at this stage of litigation.
Relying primarily on Harper v. LG Elecs. USA, Inc., 595 F. Supp.
2d 486 (D.N.J. 2009), Plaintiff argues that the "fact intensive"
analysis required for choice of law cannot be completed before
the facts are fully developed pending discovery. In response,
the Defendant contends that the choice of law analysis is
appropriate at this juncture.  Defendant argues that, as set
forth in Harper, "[s]ome choice of law issues may not require a
full factual record and may be amenable to resolution on a
motion to dismiss." Id. at 491; see Montich v. Miele, 849 F.
Supp. 2d 439, 445-48 (D.N.J. 2012)(analyzing Harper and carrying
out choice of law analysis when, "plaintiff failed to indicate
what other facts would be necessary to decide this issue.").
Defendant also contends that a choice of law analysis is
appropriate at the motion to dismiss stage because both parties

agree that an actual conflict exists and that New Jersey's "most significant relationship" test governs the analysis.

To determine the controlling law, a federal court sitting in diversity applies the choice of law rules of the forum state - here, New Jersey. Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013). In New Jersey, the relevant test is the most "most significant relationship" to the claim. P.V. v. Camp Jaycee, 197 N.J. 132, 142-44 (2008). As agreed by the parties, a true conflict exists between New York and New Jersey consumer fraud laws.  Thus, this Court must next determine which jurisdiction has the most significant relationship to the claim. Maniscalco, 709 F.3d at 207. Where there has been a fraud or misrepresentation alleged, the court will look to the factors set forth in §148 of the Restatement (Second) of Conflict of Law.  Id.

> Under subsection (1) of § 148, when the "plaintiff's action in reliance took place in the state where the false representations were made and received," there is a presumption that the law of that state applies.
>
> Under subsection (2), when the plaintiff's action in reliance takes place in a different state than where the false representations were made and received, courts weigh the following factors:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,

> (d) the domicile, residence, nationality, place of
> incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the
> subject of the transaction between the parties was
> situated at the time, and
> (f) the place where the plaintiff is to render
> performance under a contract which he has been induced
> to enter by the false representations of the
> defendant.

Id. The factors enumerated above are to be evaluated on a qualitative instead of quantitative basis, and the relative importance of these factors should be determined in light of the of the following: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." Id.

At this juncture, the parties dispute where the alleged misrepresentations emanated from. For example, the Defendant states that New York law applies because it is "the place where the alleged false representations were made and received . . . ." Def.'s Br. at 7. Plaintiff, however, argues that "[d]espite not having the benefit of discovery, it is likely that Defendant's misrepresentations can be traced back to, and emanated from their headquarters [in New Jersey]." Pl's Opp. Br. at 8. In order to engage in the choice of law analysis under either subsection (1) or (2) of §148 of the Restatement, this Court must know from where the alleged misrepresentations emanated.

After discovery provides the parties with more definitive information on the relevant factors, particularly the location of the alleged misrepresentations, this Court may revisit this issue. While there are certainly instances where the Court will engage in a choice of law analysis at the motion to dismiss stage, those cases can be distinguished as there was no dispute as to the geographic location of the alleged misrepresentations, unlike the facts presently before this Court. Compare, Prudential Ins. Co. of Am. v. Goldman, Sachs & Co., No. 12-6590, 2013 U.S. Dist. LEXIS 50788, at *17-18 (D.N.J. 2013)(holding that the court could not complete choice of law analysis, in part, because the court did not know where the alleged misrepresentations were made or relied upon), with Feldman v. Mercedes-Benz, No. 11-984, 2012 U.S. Dist. LEXIS 178924, at *16-17 (D.N.J. Dec. 18, 2012)(engaging in choice of law analysis at the motion to dismiss stage where there was no dispute as to the six factors under Section 148(2)). Thus, this Court lacks the information required to engage in the choice of law analysis at this time. See Harper, 595 F. Supp. 2d at 490-91 (finding that the Court was unable to undertake "the fact-intensive choice of law determination on the record before it."); Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 445 (D.N.J. 2012)("courts, including the Third Circuit, have decided choice-of-law issues

on a motion to dismiss when the necessary facts are pled in the complaint.").

   ii.  **NJCFA**

Based on the above analysis, for purposes of the instant motion, this Court will apply New Jersey law to Plaintiff's fraud claim under the NJCFA.    Prudential Ins. Co. of Am. v. Goldman, Sachs & Co., 2013 U.S. Dist. LEXIS 50788, at *17-18 (citing Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (after determining that a choice-of-law analysis was premature, the court noted that "[s]ince Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard"); Harper, 595 F. Supp. at 491 (deferring choice-of-law determination and applying New Jersey law for purposes of motion to dismiss because "Plaintiffs have presented a set of facts where New Jersey law governs this action")).

In order to state a NJCFA claim, a plaintiff must show three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. See Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC, 945 F. Supp. 2d 543, 558 (D.N.J. 2013)(citing International Union of

Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.,
192 N.J. 372, 929 A. 2d 1076 (2007)).

The heightened pleading standard expressed under Federal
Rule of Civil Procedure Rule 9(b) applies to Plaintiff's NJCFA
claim. Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 526 (D.N.J.
2008).  To satisfy the standard, the plaintiff must plead with
particularity the circumstances constituting a fraud.  Fed. R.
Civ. P. 9(b).  This can be accomplished by pleading "the date,
time, and place" of the fraud or otherwise injecting "precision
or some measure of substantiation into the allegations."  Slimm
v. Bank of Am. Corp., No. 12-5846, 2013 U.S. Dist. LEXIS 62849,
at *46-47 (D.N.J. May 2, 2013)(quoting Frederico v. Home Depot,
507 F. 3d 188, 200 (3d Cir. 2007)).  A plaintiff alleging fraud
must state the circumstances of the fraud with sufficient
particularity "to place the defendants on notice of the precise
misconduct with which they are charged."  Lum v. Bank of
America, 361 F.3d 217, 223-24 (3d Cir. 2004).  In other words,
the Rule "requires plaintiffs to plead the who, what, when,
where, and how: the first paragraph of any newspaper story."  In
re Advanta Corp. Sec. Litig., 180 F.3d 535, 534 (3d Cir. 1999).

Defendant argues that Plaintiff fails to adequately allege
unlawful conduct as required because there were no deceptive
acts or practices by TD Bank.  The Business Deposit Account
Agreement ("Agreement") disclosed that Defendant would apply its

applicable exchange rate to any foreign currency transaction, which the Plaintiff knew pursuant to that very Agreement.  More specifically, the Agreement states: "Items sent for collection will be credited to your Account in U.S. dollars, with the amount of U.S. dollars credited calculated <u>using our applicable</u> <u>exchange rate that is in effect on the date when we credit the</u> <u>funds</u> to your Account. . . ."  Cantenacci Decl. at Ex. B, Business Deposit Account Agreement at p. 6 (emphasis added).  Alternatively, the Defendant contends that Plaintiff fails to allege an ascertainable loss in that no out-of-pocket loss is stated and that Plaintiff cannot allege the requisite causation between the Defendants' conduct and any loss.

In response, Plaintiff avers that it has adequately pled the requisite facts to support a claim for a NJCFA violation. Namely, that the Defendant engaged in unlawful conduct by failing to disclose an FX conversion fee, which resulted in an ascertainable loss of damages when Plaintiff had to "pay an added charge/markup that was not disclosed to them, and that its damages were directly caused by Defendant's business practice of failing to disclose the exchange fee." Pl.'s Opp. Br. at 24.

Much of the parties' briefing focuses on whether the alleged conversion fee is, in fact, a fee, as Plaintiff contends, or whether it is simply a "spread between the retail rate that TD Bank charges its customers for foreign currency

transactions and the wholesale rate at which it receives the currency." Def.'s Br. at 11. In response, Plaintiff contends that this issue requires a fact intensive analysis inappropriate on a motion to dismiss. Plaintiff further argues that Defendant failed to disclose an FX conversion fee: while the Agreement states that Defendant will use its applicable exchange rate, "[it] is devoid of any reference to any FX conversion fee." Pl.'s Br. at 2.

Per the Complaint, the Plaintiff alleges that the notice of transfer for the transaction at issue referenced "what appeared to be an exchange rate of 1.3355. However, the exchange rate in the Wall Street Journal for January 30, 2014 was 1.3664." Compl. at ¶ 16. Plaintiff contends that in the February 13, 2014 letter from TD Bank, it "admitted to charging a fee in the transaction" when it discussed that "it set its rates based upon numerous criteria that did not represent the actual cost of converting the currency given the risk that is assumed in the timing of the trade." Id. at ¶ 19. Plaintiff has not alleged, nor does it argue, however, that TD Bank's applicable exchange rates were not available to it; similarly, it fails to present facts showing that Defendant charged a rate other than the "applicable rate" as quoted in the Agreement.

Plaintiff's opposition brief relies heavily on a California Superior Court case, Schwartz v. Visa Intern. Corp., No. 822404-

14

4, 2003 WL 1870370 (Cal. Sup. Ct. Apr. 7, 2003).  In Schwartz,
the plaintiffs sued Visa and MasterCard, arguing that defendants
failed to disclose currency conversion fees charged to
cardholders.  The Schwartz court found, inter alia, that:

> The cost imposed on a consumer for using his credit card to
> make a purchase denominated in another currency is a
> function of an underlying exchange rate and one or two fees
> that Visa calls "currency conversion" fees.  The networks
> select the basic exchange rate, which is either a market or
> government mandated rate and impose the first fee, the 1%
> conversion fee at issue in this case.

Id. at *7.  Based on the facts in Schwartz, the Court found that
the defendants had failed to adequately disclose the conversion
fee.  Id. at * 2.  The critical distinction between Schwartz and
the instant case, however, is that the 1% fee in Schwartz was a
fee applied regardless of and in addition to the variable
exchange rate also applied to the foreign currency transaction.
Here, the facts alleged do not show that there was additional
"fee" added, but that the Defendant charged a rate that was not
the rate quoted in the Wall Street Journal and that "did not
represent the actual cost of converting the currency . . . ."
Id. at ¶ 19.  In other words, as currently pled, Plaintiff's
allegations amount to a contention of fraud based on the
Defendant's failure to charge the customer simply the wholesale
rate.

15

Yet, as correctly pointed out by Defendant, there is nothing in the Agreement that binds TD Bank to use any particular rate – either the wholesale rate or rates as published in the Wall Street Journal.  Instead, by the Agreement's explicit terms, Defendant was to apply "our applicable exchange rate that is in effect on the date when we credit the funds." Cantenacci Decl. at Ex. B, Business Deposit Account Agreement at p. 6.  There are no factual allegations to support that Defendant did not use the "applicable exchange rate," and, therefore, no support for Plaintiff's conclusion that TD Bank failed to disclose a foreign currency exchange rate or fee.

In La. Mun. Police Employees' Ret. Sys. v. JPMorgan Chase & Co., No. 12-6659, 2013 U.S. Dist. LEXIS 93692 (S.D.N.Y. July 3, 2013) ("JPMorgan"), the court granted a motion to dismiss under analogous circumstances.  There, the plaintiff claimed that JPMorgan charged undisclosed mark-ups on foreign exchange transactions – i.e., "the Bank executed certain FX transactions at one rate, but charged the custodial clients a different rate, resulting in profit for the Bank, and that the Bank failed to disclose this practice . . . ." Id. at *3.  When an FX transaction was executed, the monthly account statement reflected the rate that the client was charged, but did not "provide the rate at which the Bank itself had acquired the

16

currency it provided to the client . . . ."  Id. at *13.
Ultimately, the court, in granting a motion to dismiss, held
that the spread on the FX transactions (the difference between
what the Bank paid and what plaintiff paid) did not constitute a
"fee." Id. at 24 (stating that a "fee" is a "sum paid or charged
for a service" and an "exchange rate" is "the ratio for
converting one country's money into another country's money."
These definitions were found to be two distinct concepts).
Additionally, because the spreads were determinable via publicly
available databases, the court found there was nothing secret
about the alleged mark-ups and defendant's failure to disclose
the spread on the FX transactions at issue would not deprive
plaintiff of the "fruits" of their Agreement.  Id. at 30-31.

Most importantly for purposes of the instant matter, the
JPMorgan court held "while there may be spreads between FX
transactions, the exchange rate a Bank charges its customers is
more naturally characterized as the price of the commodity the
customer has chosen to purchase, rather than a fee for the
provision of services." Id. at 33.  Furthermore, because the
contract at issue in JPMorgan, "imported no requirement that the
rate be the best available market rate, the rate at which the
Bank had originally procured the currency . . . or any other
particular measure," the court granted the motion to dismiss.
Id. at 34.  Again, the Agreement in the case currently before

17

this court requires the use of "our applicable exchange rate
that is in effect on the date when we credit the funds to your
Account. . . ."  There is no allegation that the Agreement
imported a requirement that any other rate be used other than
"our applicable exchange rate."[4]

       While Plaintiff contends that the adequacy of Defendant's
disclosures is an inappropriate consideration on a motion to
dismiss, this Court finds that Plaintiff has failed to plead any
facts that support its legal conclusion that Defendant charged
an FX conversion fee that was not disclosed.  At this juncture,
the facts as pled show that Defendant stated it would apply its
"applicable exchange rate" and there is no allegation that it
failed do just that; instead, Plaintiff complains that the rate
cited in the Wall Street Journal was not used and the notice of
transfer "referenced what appeared to be an exchange rate of
1.3355."  Compl. at ¶¶ 20 and 16.  Ultimately, there are no

       _____

       [4] Plaintiff's attempt to distinguish the decision in
JPMorgan, is unavailing.  In fact, some sections cited in
Plaintiff's opposition brief are totally unrelated to the
court's relevant breach of contract analysis.  For example,
plaintiff notes that the court "stressed that plaintiff's
'Amended Complaint nowhere alleges that these services are
offered to a wide customer base, or that they are otherwise
likely to 'have a broader impact on consumers at large.'"  This
discussion, however, was with respect to N.Y. Gen.Bus.L. § 349,
which requires that "to maintain a cause of action under § 349,
a plaintiff must show: (1) that the defendant's conduct is
consumer-oriented . . . ."  JPMorgan at *48.

facts alleged showing unlawful conduct by the Defendant, other than the conclusory allegations that a "fee" was charged.

This Court's finding that the Plaintiff has failed to plead with particularity unlawful conduct as required under the NJCFA is supported by case law from other courts facing issues similar to those presented in the instant matter. For example, while Plaintiff attempts to make an issue out of the adequacy of the Defendant's disclosure, stating that the adequacy of the disclosures is inappropriate on a motion to dismiss[5], other courts have disagreed that such a disclosure duty even exists.

In <u>Lipuma v. American Express Co.</u>, 406 F. Supp. 2d 1298, 1319 (S.D. Fl. 2005), the court addressed approval of a proposed class action settlement in a matter where card holders sued defendant based on its foreign currency exchange practices. The <u>Lipuma</u> court found that:

---

[5] The case cited by Plaintiff in support of this argument, <u>People ex rel. Schneiderman v. Bank of New York Mellon Corp.</u>, 40 Misc. 3d 1232(A), at *15–16 (N.Y. Sup. Ct. 2013), is inapposite. That case deals with a claim under New York's Martin Act, General Business Law sections 352 <u>et</u> <u>seq.</u>, and there, the court held that the defendant "made affirmative representations to sophisticated investors about the competitiveness of its pricing and the favorable rates it would charge [for FX transactions]." <u>Id.</u> at 15. Moreover, the court's finding that a factual issue remained was based on its holding that there were additional facts needed to make a determination as to what information was available to the plaintiffs at the time of the alleged fraudulent transactions. Here, Plaintiff does not cite any affirmative misrepresentations and there is no dispute about what facts were available to Plaintiff at the time of the transaction.

19

> American Express clearly discloses in the cardmember
> agreements that "if you initiate a transaction in a foreign
> currency, it will be converted into U.S. dollars on the
> date it is processed by us or our agents at a rate set by
> us based on an interbank, tourist or (where required by
> law) official rate, increased in each instance by [1-2%]."
> Admittedly, this is not repeated in the monthly statements.

Id. (emphasis added).  With respect to the interbank rate, the

court went on to add:

> As to the failure to disclose to cardmembers the interbank
> rates American Express used, intervenors have cited no
> authority to support a finding that a duty to disclose this
> information to cardmembers exists.

Id. at 1319 (citing In re Mexico Money Transfer Litigation, 267

F.3d 743 (7th Cir. 2001)).  This Court similarly finds the

decision in In re Mexico Money Transfer Litigation instructive.

In In re Mexico, plaintiffs claimed that two wire-transfer

companies fraudulently represented that patrons could wire money

at a certain price ("$ 300 to Mexico for only $ 15"), and that

the representation was fraudulent because plaintiffs believed

that "the quoted price must include the difference in foreign

exchange rates (the 'fx spread,'. . .) or that the defendants

must at least reveal the price that they pay for pesos, so the

customers may work out the spread themselves." Id. at 745.  In

response to this, the Court found:

> No state or federal law requires either currency exchanges
> or wire-transfer firms to disclose the interbank rate at
> which they buy specie, as opposed to the retail rate at
> which they sell currency (and the retail price is

> invariably disclosed). That is why the plaintiffs have been
> driven to make generic fraud claims. But <u>since when is</u>
> <u>failure to disclose the precise difference between</u>
> <u>wholesale and retail prices for any commodity "fraud"?</u>

<u>Id.</u> at 749 (emphasis added).

Again, Plaintiff's allegations, in many ways, track the allegations rejected in <u>In re Mexico</u>: as currently pled, the Plaintiff in this case seeks to impose liability on Defendant for failing to disclose the rate at which it acquired the currency and to impose a requirement on Defendant to charge a specific exchange rate not required by the parties' Agreement. As currently pled, Plaintiff has failed to satisfy the requirements of Rule 9(b) with respect to unlawful conduct by the Defendant; this Court will grant Defendant's motion to dismiss.  Plaintiff will, however, be given leave to file an amended complaint, as requested, within twenty-one (21) days of this Opinion.

### b. Unjust Enrichment

Plaintiff next asserts a claim of unjust enrichment. "A cause of action for unjust enrichment requires proof that defendants received a benefit and that retention of that benefit without paying would be unjust." <u>Ciser v. Nestle Waters North Am., Inc.</u>, No. 13-4509, 2015 U.S. App. LEXIS 195, at *7-8 (3d Cir. January 7, 2015)(quoting <u>Goldsmith v. Camden Cnty.</u>

21

<u>Surrogate's Office</u>, 975 A.2d 459, 462 (N.J. Super. Ct. 2009)).
In New Jersey, "unjust enrichment is not an independent theory
of liability, but is the basis for a claim of quasi-contractual
liability." <u>Ciser</u>, 2015 U.S. App. LEXIS 195, at *8.  Because the
parties agree that there is no actual conflict between the laws
of New York and New Jersey with respect to unjust enrichment,
the Court can definitively resolve the motion on this Count.[6]

The Defendant argues that no claim for unjust enrichment
can be alleged in the instant matter because neither New York
nor New Jersey recognizes an independent tort cause of action
for unjust enrichment where such a claim simply duplicates a
plaintiff's breach of contract claim.  In response, Plaintiff
contends that Defendant's argument is premised on its contention
that it adequately disclosed its conversion methodology, and
"because Plaintiff has sufficiently pled an underlying tort
under the NJCFA . . . its claim for unjust enrichment is
similarly sufficiently pled . . . ." Pl's Br. at 28.

---

[6] "The basic elements of an unjust enrichment claim in New
York require proof that (1) defendant was enriched, (2) at
plaintiff's expense, and (3) equity and good conscience militate
against permitting defendant to retain what plaintiff is seeking
to recover." <u>Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.</u>,
373 F.3d 296, 306 (2d Cir. 2004).

With respect to unjust enrichment, Plaintiff alleges that "in paying a fee for the foreign currency transaction, Plaintiff . . . conferred a benefit on Defendant . . . [which] Defendant accepted and unjustly retained . . . ." Compl. at ¶¶ 43-44. Pursuant to paragraph 59 of the Complaint, Plaintiff alleges that Plaintiff and Class Members entered into contracts with the Defendant, but the Complaint contains no allegations at this juncture that call into question the very validity of the contract(s) at issue. Thus, where the pleading supports the existence of a valid contract, which has not been called into question, an unjust enrichment claim cannot stand where there is also a breach of contract claim. RD Legal Funding, LLC v. Cohen, 2013 U.S. Dist. LEXIS 110875, at *23 (D.N.J. Aug. 7, 2013)("Since unjust enrichment is 'not an independent theory of liability, but is the basis for a claim of quasi-contractual liability,' a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim.")(quoting Goldsmith v. Camden County Surrogate's Office, 408 N.J. Super. 376, 382, 975 A.2d 459 (App. Div. 2009)). While pleading in the alternative is permissible,[7] where a plaintiff "concedes that its

_____

[7] While the Defendant cites the decision in Swift v. Pandey, No. 13-650, 2013 U.S. Dist. LEXIS 162029, at * 12 n.3 (D.N.J. Nov. 13, 2013), for the proposition that an unjust enrichment claim cannot be sustained where it simply duplicates a conventional tort or breach of contract claim, this Court notes

relationship is governed—in its entirety—by a valid and binding contract, Plaintiff has failed to state a facially plausible claim of unjust enrichment under New Jersey law." Id. at *24. Plaintiff's opposition papers do not address this issue and, like the Complaint, fail to contest the validity of the underlying contract(s); as such, this Court will grant Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

### c. Violation of Regulation E, 12 C.F.R. § 205.10(b) and the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. 1693 et seq.

With respect to the Electronic Fund Transfers Act, ("EFTA"), 15 U.S.C. 1693 et seq. and Regulation E, 12 C.F.R. § 205.10(B), which implements the EFTA, Plaintiff claims that these sections were violated when "Defendant made unauthorized withdrawals from [Plaintiff's] Commercial Account on a recurring basis without obtaining a writing signed or similarly

---

that at this stage, other Courts, including the Court that decided the Swift matter, have allowed an unjust enrichment claim to proceed even where there is a concurrent breach of contract claim because a "[p]laintiff is not barred from offering alternative or inconsistent theories of recovery arising out of the same facts." Mizrahi v. Checkolite International, Inc., No. 14-79876, 2015 U.S. Dist. LEXIS 91609, at *7 (D.N.J. July 15, 2015).

authenticated authorization for preauthorized electronic fund
transfers . . . ."  Compl. at ¶ 51.

Defendant argues that no such claim can stand because the
protections of the EFTA and Regulation E in this instance do not
extend to corporations like the Plaintiff.  Under Section 15
U.S.C. § 1693a(5), a consumer is defined as a "natural person"
and case law interpreting this issue has held that
"[c]orporations or other business entities are not 'consumers'
for purposes of EFTA.  . . . Plaintiffs here are all business
entities, and hence do not fall within the definition of
'consumers.'"  Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d
384, 402 (W.D.N.Y. 2010).

The case cited by Plaintiff in its opposition brief only
serves to underscore the fact that the EFTA and Regulation E are
inapplicable here.  See Royal Arcanum Hosp. Assn. v. Capital One
Bank, 35 Misc. 3d 1205(A)(N.Y. Sup. Ct. 2012)(finding that
plaintiff the EFTA and Regulation E were "inapplicable to
business entities like plaintiff.")(citing Ironforge.com v.
Paychex, Inc., 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010)).  Thus,
because the statute is inapplicable by its plain terms the
Defendant's motion to dismiss the EFTA and Regulation E claim
shall be granted.

### d. Breach of Contract

With respect to Plaintiff's breach of contract claim, the parties agree there is no meaningful distinction between New York and New Jersey law.  Plaintiff has alleged that Defendant had a duty to adequately disclose its foreign currency conversion methodology.  Again, Defendant repeats its arguments, made in support of its motion to dismiss Plaintiff's fraud-based claim, that it "adequately disclosed its foreign currency conversion methodology in the Deposit Account Agreement," – i.e., that it would use its "applicable exchange rate."

To establish a breach of contract claim, a plaintiff must demonstrate that (1) the parties entered into a valid contract, (2) that the plaintiff honored his own obligations under the contract, (3) that the defendant failed to perform his obligations under the contract, and (4) that the plaintiff sustained damages as a result.  See DeHart v. U.S. Bank, N.A. ND, 811 F. Supp. 2d 1038, 1047-48 (D.N.J. 2011); Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999)(stating that the elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach).

26

For the reasons already set forth above, this Court finds that as currently pled, Plaintiff has failed to adequately allege a failure to perform under the Agreement by the Defendant.[8]  Plaintiff has not pled facts sufficient to sustain its conclusory assertion that Defendant charged a "fee"; instead, the allegations only state that the Agreement stated that the Defendant would use its applicable exchange rate, and it failed to use the rate quoted in the Wall Street Journal. The allegations fail to demonstrate a breach of contract.  As with the fraud claim, however, Plaintiff shall have leave to amend.

### e. Other States' (and the District of Columbia's) Consumer Protection Laws.

The final count of Plaintiff's Complaint, Count V, seeks to assert claims for "violations of other states' consumer protection laws," and cites, broadly, all other states consumer protection acts.  Compl. at ¶ 64.  Because Plaintiff's claims are being dismissed as set forth above, it has no standing to pursue additional allegations on behalf of class members at this juncture as it has not sufficiently alleged that it was injured. Zimmerman v. Schaeffer, No. 06-17845, 2008 U.S. Dist. LEXIS

---

[8] Plaintiff acknowledges in its opposition brief that the breach of contract arguments are identical to those asserted with respect to the NJCFA claim.  Pl.'s Opp. Br. at 28.

17845, at *12 (M.D. Pa. Mar. 7, 2008)("If none of the named plaintiffs can establish standing for himself, then none may seek relief on behalf of the class.").  Count V will similarly be dismissed.


## IV. Conclusion

For the reasons set forth above, this Court will grant Defendant's motion to dismiss.  Plaintiff's will, however, be granted leave to file an amended complaint within twenty-one (21) days of entry of this Opinion in order to cure the deficiencies identified herein.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated:    August 18, 2015