NOT FOR PUBLICATION                              [Docket No. 32]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| MZL CAPITAL HOLDINGS, INC. and THOMAS RAIC, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>       v.<br><br>TD BANK, N.A. and UNIDENTIFIED ENTITIES (A–Z),<br><br>    Defendants. | Civil No. 14-5772 (RMB/AMD)<br><br>**OPINION** |

APPEARANCES:

Bruce H. Nagel
Andrew I. Pepper
Nagel Rice, LLP
103 Eisenhower Parkway
Suite 103
Roseland, NJ 07068
    *Attorneys for Plaintiffs MZL Capital Holdings, Inc.*
    *and Thomas Raic*

James S. Richter
Jeffrey P. Catenacci
Winston & Strawn LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, NJ 07102
    *Attorneys Defendant TD Bank, N.A.*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the Motion to

Dismiss by Defendant TD Bank, N.A. ("Defendant" or "TD Bank")

[Docket No. 15], seeking the dismissal of the Second Amended

Class Action Complaint (the "Second Amended Complaint") filed by Plaintiffs MZL Capital Holdings, Inc. ("MZL") and Thomas Raic ("Raic" and, together with MZL, the "Plaintiffs") [Docket No. 31].  For the reasons set forth below, this Court will grant the Motion to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs MZL, a New York corporation, and Raic, a resident of New York State, hold a commercial checking account and personal checking account, respectively, with TD Bank, a New Jersey Corporation.  Compl. ¶¶ 51, 64.  Plaintiffs bring this putative class action on behalf of themselves and all others similarly situated.  Id. at ¶ 78.

Plaintiffs utilized their TD Bank accounts to engage in international transactions involving the sending or receipt of wired currency from foreign countries.  Id. at ¶¶ 55, 69-70. MZL's relationship with TD Bank is governed by the Business Deposit Account Agreement (the "BDAA"), which provides, in relevant part, that: "Items sent for collection will be credited to your Account in U.S. dollars, with the amount of U.S. dollars

_____

[1] The facts recited herein are derived from the Plaintiffs' Second Amended Complaint [Docket No. 31].  The Court will and must accept Plaintiffs' well-pled allegations as true for purposes of this motion to dismiss.  See Bistrian v. Levi, 696 F.3d 352, 358 n. 1 (3d Cir. 2012).  Additionally, as the Court writes primarily for the parties, it assumes the reader's familiarity with the facts and recites only those relevant to the decision herein.

credited calculated using <u>our applicable exchange rate</u> that is in effect on the date when we credit the funds to your Account and not when the deposit is made." <u>Id.</u> at ¶ 14 (emphasis in original) (quoting BDAA, Ex. A at 6 [Docket No. 31]).   The contract governing Raic's relationship with TD Bank also refers to an "Applicable Rate".  <u>Id.</u> at ¶ 67.   TD Bank does not define "our applicable exchange rate" or "Applicable Rate" in the contracts.  <u>See id.</u> at ¶¶ 15, 68.   Plaintiffs, however, allege that:

> [o]n information and belief, TD Bank bases its Applicable Rate on a number of different factors, including but not limited to: (i) an interbank rate that TD Bank purchases its currency as a principal in the foreign exchange market; (ii) the prevailing daily market public customer rates; (iii) the size of the exchange; and (iv) other proprietary factors known only to TD Bank.

<u>Id.</u> at ¶ 16.   Despite listing these factors, Plaintiffs nonetheless allege that they "believed [TD Bank's applicable] rate would be based upon some objective Customer Market rate, such as the rate utilized in the Wall Street Journal for currency transactions." <u>Id.</u> at ¶¶ 54, 68.   TD Bank provides customers with its applicable exchange rate for a particular currency on a particular date either by telephone or by e-mail. <u>Id.</u> at ¶ 44.  Plaintiffs contend that TD Bank does this to "discourage its customers from comparative analysis of its rates versus its competitors." <u>Id.</u> at ¶ 42.

According to Plaintiffs' allegations, around January 29, 2014, MZL received a £70,000 wire transfer from London, England. Id. at ¶ 55.  TD Bank sent MZL a notice of the transfer and credited MZL's account $93,285.  MZL alleges that "[t]he notice referenced what appeared to be an exchange rate of 1.3355. However, the exchange rate appearing in the Wall Street Journal for January 30, 2014 was 1.3664."  Id.

On or around February 10, 2014, Alex Dorian, the principal of MZL, called TD Bank regarding "what appeared to be an incorrect exchange rate."  Id. at ¶ 56.  The next day, a TD Bank representative indicated that an adjustment would be made to MZL's account and, shortly thereafter, Dorian received a letter from TD Bank "indicating that TD Bank operated not as an agent in the conversion of money but rather as a principal in buying and selling foreign currency and that it sets its rates based upon numerous criteria that did not represent the actual cost of converting the currency given the risk that is assumed in the timing of the trade."  Id. at ¶¶ 56, 58.  From this, Plaintiffs conclude that, "[i]n short, TD Bank admitted to charging a fee in the transaction."  Id. at ¶ 58.  On February 15, 2014, MZL's bank statement reflected a $250 credit.  Id. at ¶ 57.  Based on the observation that the exchange rate utilized by TD Bank was different from "the objective market-based rate quoted in the Wall Street Journal," Plaintiffs conclude that "TD Bank received

4

an improper undisclosed embedded transaction fee" that is
"equivalent to a certain number of basis points it adds to what
should be the appropriate exchange rate."  Id. at ¶¶ 59-60.

When opening his TD Bank checking account, Plaintiff Raic
was aware that he would likely convert Euros to U.S. dollars
because he has family in Croatia.  Id. at ¶ 66.  On or about
July 29, 2014, Raic's father in Croatia sent Raic €61,323.41 via
wire transfer to Raic's TD Bank account.  Id. at ¶ 69.  TD Bank
credited his account $80,014.79.  Id.  Although TD Bank did not
inform him of the exchange rate applied, "the rate apparently
used by TD Bank was 1.3048," even though, according to
Plaintiffs, the Wall Street Journal exchange rate for July 29,
2014 was 1.3409.  Id.  According to Raic, other foreign exchange
brokers offered exchange rates more favorable than those
provided by TD Bank.  Id.

Raic received another wire transfer from his father in the
amount of €22,500, on or around August 10, 2015.  Id. at ¶ 70.
TD Bank credited his account $23,582.25, which purportedly
reflects an exchange rate of 1.0481, as opposed to the Wall
Street Journal's exchange rate of 1.1019 for the same date.  Id.
Raic, once again, contends that other brokers provided better
exchange rates than TD Bank and that his brother received "a far
higher amount upon his exchange of funds" at other banks for

similar wire transfers received from their father.  Id. at ¶¶ 70-71.

After each of these transactions, Raic called TD Bank's foreign exchange desk to inquire as to the rates applied by TD Bank to his wire transfers.  Id. at ¶ 72.  Raic alleges that he "was told only that TD Bank used a Market Rate to exchange his funds **and** also applied a fee to that transaction.  TD Bank, however, was tight lipped and would not provide any further details concerning how it calculated the exchange rate applied to Raic's transactions."  Id.  Based on this, Plaintiffs claim, "on information and belief, [that] it is clear that TD Bank's applicable exchange rate includes a flat embedded transaction fee equivalent to a certain number of basis points it adds to what should be the appropriate exchange rate."  Id. at ¶ 74.

Plaintiffs' Second Amended Complaint alleges that TD Bank's "applicable rate" is based on "the less favorable exchange rates available on the Customer Market," as opposed to the interbank market, and that TD Bank then charges "an undisclosed embedded transaction fee that correlates to additional basis points that are added on top of the Customer Market rate TD Bank find appropriate."  Id. at ¶ 40.  According to Plaintiffs, TD Bank intentionally does not disclose this purported fee or make its applicable rate "readily available . . . so that it can induce or mislead its customers into believing it is operating via an

6

objective rate, such as a Customer Rate set forth in the Wall Street Journal." Id. at ¶ 43.  Plaintiffs contend that the term "our applicable exchange rate" is a deceptive term intended to "confuse and mislead customers" into believing that it uses an objective rate such as that quoted in the Wall Street Journal. Id. at ¶ 47.  Plaintiffs also claim that TD Bank's "deception is further buttressed" by Defendant's requirement that customers call or e-mail to obtain its applicable rate for a particular day and currency.  Id.

Based largely on the allegations related to MZL, Plaintiff MZL filed this action against TD Bank on September 16, 2014 [Docket No. 1], setting forth five counts: (1) a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1; (2) unjust enrichment; (3) violations of Regulation E, 12 C.F.R. § 205.10(b) and the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693, et seq.; (4) breach of contract; and (5) a violation of the consumer protection laws of forty-eight other states and the District of Columbia.  TD Bank moved to dismiss the Plaintiff's complaint (the "Original Complaint") on December 23, 2014.  On August 18, 2015, the Court granted the Defendant's motion and dismissed the Original Complaint in its entirety for failure to state a claim.  8/18/2015 Opinion [Docket No. 20]. MZL's unjust enrichment and Regulation E and EFTA claims were dismissed with prejudice.  The Court, however, permitted MZL to

file an amended complaint within twenty-one days to remedy the defects in the other claims.  Id.

On September 4, 2015, MZL filed its First Amended Complaint [Docket No. 22].  TD Bank filed a pre-motion letter, pursuant to this Court's Individual Rules and Procedures, indicating its intention to file a motion to dismiss the First Amended Complaint and setting forth its arguments in support of that proposed motion.  [Docket No. 24].  TD Bank consented to MZL amending its complaint once more, instead of proceeding with its motion.  On December 4, 2015, Plaintiffs filed the Second Amended Complaint [Docket No. 31], which added Plaintiff Raic and set forth the following four counts: (1) a violation of the NJCFA; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) a violation of the consumer protection laws of forty-eight other states and the District of Columbia.  Defendant TD Bank filed the instant motion to dismiss the Second Amended Complaint on December 23, 2015 [Docket No. 32].

## II.   **MOTION TO DISMISS STANDARD**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v Twombly, 550 U.S.

544, 570 (2007)).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  Id. at 663.  "[A]n unadorned, the
defendant-unlawfully-harmed me accusation" does not suffice to
survive a motion to dismiss.  Id. at 678.  "[A] plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain,
478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district court
should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff
> must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> Third, when there are well-pleaded factual allegations, a
> court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for
> relief.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (internal
citations, quotations, and modifications omitted) (quoting
Iqbal, 556 U.S. at 675, 679).

Rule 12(b)(6) requires the district court to "accept as
true all well-pled factual allegations as well as all reasonable
inferences that can be drawn from them, and construe those

allegations in the light most favorable to the plaintiff."
Bistrian, 696 F.3d at 358 n. 1.  Only the allegations in the
complaint and "matters of public record, orders, exhibits
attached to the complaint and items appearing in the record of
the case" are taken into consideration.  Oshiver v. Levin,
Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir.
1994) (citing Chester Cty. Intermediate Unit v. Pennsylvania
Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).  A court may
also "consider an undisputedly authentic document that a
defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document."  Pension Ben.
Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196
(3d Cir. 1993).

### III.   LEGAL ANALYSIS

#### A. New Jersey Consumer Fraud Act

To state a NJCFA claim, a plaintiff must establish three
elements: (1) unlawful conduct by the defendant; (2) an
ascertainable loss by plaintiff; and (3) a causal relationship
between the unlawful conduct and the ascertainable loss.  Ciser
v. Nestle Waters N. Am. Inc., 596 F. App'x 157, 160 (3d Cir.
2015) (citing Zaman v. Felton, 219 N.J. 199, 98 A.3d 503, 516
(2014)).[2]

---

[2] The Court applies New Jersey law to Plaintiffs' consumer
fraud claim.  It is unclear to the Court whether TD Bank

Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies to NJCFA claims that sound in fraud.  Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 526 (D.N.J. 2008); see also Frederico v. Home Depot, 507 F.3d 188, 200, 202-03 (3d Cir. 2007).  To satisfy this standard, a plaintiff must plead with particularity the circumstances constituting a fraud.  Fed. R. Civ. P. 9(b).  This can be accomplished by pleading "the date, time, and place" of the fraud or otherwise injecting "precision or some measure of substantiation into the allegations."  Slimm v. Bank of Am. Corp., 2013 WL 1867035 (D.N.J. May 2, 2013) (quoting Frederico, 507 F.3d at 200).  "[A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the

---

continues to dispute that New Jersey law applies to this claim, given that it has not raised a choice-of-law issue in the briefs pertaining to the instant motion.  For the same reasons set forth in full in this Court's August 18, 2015 Opinion, the Court finds that a choice-of-law analysis is premature at this stage and, therefore, will apply New Jersey law to Plaintiffs' consumer fraud claim.  See 8/18/2015 Opinion at 7-11 [Docket No. 20]; see also Prudential Ins. Co. of Am. v. Goldman, Sachs & Co., 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (citing Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (after determining that a choice-of-law analysis was premature, court noted that "[s]ince Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard."); Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (deferring choice-of-law determination and applying New Jersey law for purposes of motion to dismiss because "Plaintiffs have presented a set of facts where New Jersey law governs this action")).

'precise misconduct with which [it is] charged.'"  <u>Frederico</u>,
507 F.3d at 200 (quoting <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 223-
24 (3d Cir. 2004)).  In other words, Rule 9(b) "requires
plaintiffs to plead the who, what, when, where, and how: the
first paragraph of any newspaper story."  <u>In re Advanta Corp.
Sec. Litig.</u>, 180 F.3d 525, 534 (3d Cir. 1999).

    This Court dismissed Plaintiffs' NJCFA claim, as pled in
the Original Complaint, for failure to plead unlawful conduct on
the part of Defendant TD Bank with particularity.  The Court
found that Plaintiffs' original NJCFA claim "fail[ed] to present
facts showing that Defendant charged a rate other than the
'applicable rate' as quoted in the Agreement."  8/18/2015
Opinion at 14.  Although MZL claimed that an undisclosed fee had
been applied to its foreign currency transactions, the facts
alleged in the Original Complaint did not support such a
finding.  Rather, the allegations showed only that Defendant
charged a rate that was different from the rate in the Wall
Street Journal, a rate which Defendant was under no obligation
to apply.  <u>Id.</u> at 15.  The Court, therefore, found that the
Original Complaint failed to allege "any facts to support
[MZL's] legal conclusion that Defendant charged an FX [foreign
currency] conversion fee that was not disclosed."  <u>Id.</u> at 18.
While the Court dismissed the NJCFA claim for these reasons, it
nonetheless permitted MZL to amend its pleadings.

12

Plaintiffs' amended pleadings fare no better.  While large portions of Plaintiffs' Second Amended Complaint are nearly identical to the deficient Original Complaint, Plaintiffs have supplemented their pleadings to pursue two new theories of the case.  First, Plaintiffs distance themselves from the notion rejected by the Court in its previous Opinion, namely that the application of TD Bank's "applicable exchange rate," as opposed to an objective rate, such as that published in the Wall Street Journal, in itself constitutes the imposition of an impermissible undisclosed fee.  Instead, Plaintiffs now contend that TD Bank not only applies its own applicable exchange rate to foreign currency transactions, but that it also imposes an undisclosed embedded transaction fee that correlates to a certain number of basis points in addition to the applicable rate.  Second, Plaintiffs argue that the application of TD Bank's "applicable exchange rate" itself, without disclosing the rate or the rate-setting methodology, is misleading and improper and, therefore, violates the NJCFA.  For the reasons set forth below, however, the Court finds that Plaintiffs' NJCFA claim as currently pled suffers from the same infirmities as the original NJCFA claim and must be dismissed.

### i. Undisclosed Embedded Transaction Fee

In the Second Amended Complaint, Plaintiffs once again contend that TD Bank charges an undisclosed transaction fee when

13

it converts foreign currency into U.S. dollars.  Plaintiffs now
allege, however, on information and belief, that TD Bank charges
an undisclosed embedded transaction fee, in addition to applying
its Applicable Exchange Rate, and that this fee "correlates to
additional basis points that are added on top of the Customer
Market rate TD Bank find appropriate."  Compl. ¶¶ 40; see also
id. at ¶¶ 60, 74.

Defendant argues that Plaintiffs' amended pleadings still
fall short of the heightened pleading requirements in Rule 9(b)
because the allegations are conclusory and made largely on
information and belief.  Plaintiffs, in turn, contend that they
should be relieved of their obligation to plead fraud with
particularity where relevant information is in the sole
possession of the Defendant and, therefore, that they are
permitted to plead factual allegations upon information and
belief.  Pls. Opp. Br. at 14 [Docket No. 33].  While the "rigid
requirements of Rule 9(b) may be relaxed" where "it can be shown
that the requisite factual information is peculiarly within the
defendant's knowledge or control," this relaxation is not
license for Plaintiffs to rely upon boilerplate and conclusory
allegations.  In re Rockefeller Ctr. Properties, Inc. Sec.
Litig., 311 F.3d 198, 216 (3d Cir. 2002) (citing In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d
Cir. 1997)).

In fact, "it is well settled that Rule 9(b) applies even when the fraud relates to matters within the knowledge of the defendant and that allegations based on information and belief do not satisfy Rule 9(b) unless the complaint sets forth the facts upon which the belief is founded." Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 313 (D.N.J. 2005), aff'd sub nom. Zavala v. Wal Mart Stores Inc., 691 F.3d 527 (3d Cir. 2012) (internal quotations and citations omitted). The Third Circuit has explained that, "even under a more relaxed application of [Rule 9(b)], plaintiffs must accompany such an allegation with a statement of facts upon which their allegation is based." Shapiro v. UJB Fin. Corp., 964 F.2d 272, 285 (3d Cir. 1992). "To avoid dismissal in these circumstances, a complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity. This requirement is intended to ensure that plaintiffs thoroughly investigate all possible sources of information, including but not limited to all publicly available relevant information, before filing a complaint." Id.

Plaintiffs allege no facts whatsoever upon which their allegations, made on information and belief, that TD Bank charges an undisclosed "flat embedded transaction fee equivalent to a certain number of basis points" are founded. See, e.g.,

15

Compl. ¶ 74.  Additionally, Plaintiffs have not set forth "the
nature and scope of [their] effort[s] to obtain" the necessary
information from the Defendant prior to filing the Second
Amended Complaint.  See Shapiro, 964 F.2d at 285.  Instead,
Plaintiffs make unsubstantiated conclusions that claim, for
example, that "TD Bank admitted to charging a fee in the
transaction."  Id. at ¶ 58.  This conclusory statement is not
based upon any well-pled allegations.  At most, TD Bank admitted
to charging a rate that is not the interbank rate or the rate
published by the Wall Street Journal.  The Court has already
found that TD Bank was under no obligation to charge any
particular rate and that it, in fact, expressly stated that it
would charge its "applicable rate".  See 8/18/2015 Opinion at
16-18.

    The only fact, as opposed to conclusion or conjecture, put
forth by Plaintiffs to support the existence of an undisclosed
fee imposed by TD Bank involves Plaintiff Raic, who was named as
a plaintiff in this action for the first time in the Second
Amended Complaint.  According to the Second Amended Complaint, a
TD Bank representative allegedly informed Raic over the phone
that "TD Bank used a Market Rate to exchange his funds **and** also
applied a fee to that transaction."  Compl. ¶ 72 (emphasis in
original).  Plaintiffs conclude from this conversation that, "on
information and belief, it is clear that TD Bank's applicable

16

exchange rate includes a flat embedded transaction fee equivalent to a certain number of basis points it adds to what should be the appropriate exchange rate." Id. at ¶ 74.

Defendant notes that, at most, the Second Amended Complaint "only alleged that Raic was told a fee was applied to his [foreign exchange] transaction--not that a fee was applied on top of the applicable exchange rate. . . . Nowhere does the [Second Amended Complaint] allege that Raic was told that the exchange rate itself 'included a transaction fee' (i.e. an embedded transaction fee)." Def. Reply Br. at 5 [Docket No. 34] (emphasis in original). The Court agrees. Based upon the allegations in the Second Amended Complaint, the Court is at a loss as to the factual basis for Plaintiffs' "information and belief" that TD Bank imposes an embedded transaction fee that corresponds to a certain number of basis points on its foreign currency transactions. The Second Amended Complaint provides no facts to support such a conclusion.

While this Court must "draw all reasonable inferences in favor of [the Plaintiffs]" for purposes of this motion to dismiss, Bohus v. Restaurant.com, Inc., 784 F.3d 918, 921 (3d Cir. 2015), the Court emphasizes that it need only draw reasonable inferences from the well-pled allegations in favor of the Plaintiffs. Plaintiffs' conclusion that TD Bank charges an undisclosed embedded transaction fee equivalent to a certain

number of basis points is not a reasonable inference that can be drawn from the well-pled factual allegations in the Second Amended Complaint.[3]  Moreover, Plaintiffs' vague allegations regarding a telephone conversation on an unspecified date with an unidentified TD Bank representative are insufficient to support the existence of such an undisclosed embedded fee, even under a relaxed application of the Rule 9(b)'s heightened pleading requirements.

In the amended pleadings, Plaintiffs have also added several allegations regarding the foreign exchange market and alleged market manipulation by other financial institutions that are not parties or in any way related to this action.  See generally Compl. ¶¶ 19-35.  While these allegations provide background information regarding the foreign exchange market generally, they indicate nothing about the specific parties involved in this action or the particular misconduct alleged by the Plaintiffs.  Therefore, while the allegations establish that other financial institutions may have engaged in unlawful

---

[3] Indeed, the Court notes, without making any findings, that the more reasonable inference to be drawn from the alleged statement to Raic is that the TD Bank representative was referring to the $15.00 Incoming Wire Fund Transfer Fee that TD Bank charges on domestic and international incoming wires, which is clearly disclosed in the Business Fee Schedule attached to the BDAA.  Def. Br. Ex. A at 23 [Docket No. 32-3].

conduct in relation to foreign exchange transactions, they do not show that Defendant TD Bank did.[4]

### ii. Misleading Conduct

Plaintiffs also claim that TD Bank's use of its "applicable exchange rate" is misleading and, therefore, constitutes consumer fraud under the NJCFA.  <u>See</u> Pls. Opp. Br. at 19-20. While "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud," <u>Van Holt v. Liberty Mut. Fire Ins. Co.</u>, 163 F.3d 161, 168 (3d Cir. 1998) (quoting <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 647 A.2d 454, 462 (1994)), the Second Amended Complaint alleges no facts to support Plaintiffs' conclusion that TD Bank engaged in misleading unlawful conduct by charging its "applicable exchange rate".

Plaintiffs' allegations are nothing more than conclusory statements that need not be credited.  <u>See, e.g.</u>, Compl. ¶¶ 47, 54, 68.  For example, Plaintiffs baldly assert that "TD Bank's broad and undefined term 'applicable exchange rate' is a deceptive communication purposely designed to confuse and mislead its customers into believing that TD Bank uses only a

---

[4] Likewise, Plaintiffs' allegation regarding complaints about undisclosed fees purportedly authored by anonymous TD Bank customers on TD Bank's website, Compl. ¶ 48, will not be credited.  The Court agrees with the Defendant that these alleged comments are unsubstantiated and speculative and, as such, do not provide factual support for Plaintiffs' claims. <u>See</u> Def. Reply Br. at 4.

reasonable and objective Customer Market rate, such as the rate posted in the Wall Street Journal, and does not include an embedded fee."  Id. at ¶ 47.  Plaintiffs, however, do not allege any facts to support their position that TD Bank's use of its applicable exchange rate is unlawfully misleading.  Moreover, Plaintiffs allege no facts to support their belief that TD Bank would apply an objective exchange rate, such as that in the Wall Street Journal, given that TD Bank is under no obligation to do so and TD Bank specifically disclosed that it would apply "our applicable exchange rate".[5]  The Second Amended Complaint is devoid of factual allegations supporting Plaintiffs' position that Defendant engaged in misleading conduct in violation of the NJCFA.  Plaintiffs' conclusions alone are insufficient to state a claim.

Plaintiffs also contend that they have resolved the pleading defects previously identified by this Court since they "have now pled that TD Bank's conduct is misleading because 'TD

---

[5] Plaintiffs' own allegations belie this conclusion.  While alleging, on the one hand, that the term "our applicable exchange rate" misleadingly suggests that an objective exchange rate is applied, Plaintiffs also allege, on the other hand, that "TD Bank bases its Applicable Rate on a number of different factors, including but not limited to (i) an interbank rate that TD Bank purchases its currency as a principal in the foreign exchange market; (ii) the prevailing daily market public customer rates; (iii) the size of the exchange; and (iv) other proprietary factors known only to TD Bank."  Compl. ¶ 16 (emphasis added).

Bank's applicable exchange rates were not available to it.'"
Pls. Opp. Br. at 27 (quoting 8/18/2015 Opinion at 14).  The
Court notes that this is inaccurate.  Plaintiffs nowhere allege
that TD Bank's applicable exchange rates were not available to
its customers.  In fact, Plaintiffs allege in the Second Amended
Complaint that TD Bank makes its applicable exchange rates
available by telephone or e-mail.  See, e.g., Compl. ¶¶ 44, 47,
49.  Plaintiffs do not allege that Defendant is required to
provide the information via any particular medium.  Instead,
Plaintiffs summarily conclude that TD Bank only makes its
applicable exchange rates available by telephone or e-mail in an
unlawful and misleading effort to purposely "discourage its
customers from comparative analysis of its rates versus its
competitors."  Id. at ¶ 42.  Such conclusory allegations will
not suffice to state a claim under the NJCFA.

   Additionally, Plaintiffs have not established that
Defendant is under any duty to disclose its foreign currency
conversion methodology.  The Court reiterates that, "as
currently pled, the Plaintiff[s] in this case seek[] to impose
liability on Defendant for failing to disclose the rate at which
it acquired the currency and to impose a requirement on
Defendant to charge a specific exchange rate not required by the
parties' Agreement."  8/18/2015 Opinion at 21.  The Court, once
again, finds no authority that supports the existence of such a

disclosure duty.  Additionally, the Court remains persuaded by the Seventh Circuit's reasoning in In re Mexico Money Transfer Litigation, 267 F.3d 743 (7th Cir. 2001).  The Seventh Circuit explained that:

> No state or federal law requires either currency exchanges or wire-transfer firms to disclose the interbank rate at which they buy specie, as opposed to the retail rate at which they sell currency (and the retail price is invariably disclosed).  That is why the plaintiffs have been driven to make generic fraud claims.  But since when is failure to disclose the precise difference between wholesale and retail prices for any commodity "fraud"?
>
> Money is just a commodity in an international market.  Pesos are for sale--at one price for those who buy in bulk . . . and at another, higher price for those who buy at retail and must compensate the middlemen for the expense of holding an inventory, providing retail outlets, keeping records, ensuring that the recipient is the one designated by the sender, and so on.  Neiman Marcus does not tell customers what it paid for the clothes they buy, nor need an auto dealer reveal rebates and incentives it receives to sell cars.  This is true in financial markets no less than markets for physical goods.  The customer of a bank's foreign-exchange section . . . is quoted a retail rate, not a wholesale rate, and must turn to the newspapers or the Internet to determine how much the bank has marked up its Swiss Francs or Indian Rupees. . . . Nor need the bank, or an intermediary such as MoneyGram, explain to customers how it profits from the float on funds it holds for a day or two between receipt and delivery.  MoneyGram and Western Union revealed truthfully, and separately, the exchange rate they offered (the price per peso) and the rate for the wire transfer to Mexico.  Each customer was told how many dollars in the United States would result in how many pesos delivered in Mexico.  Nothing in this transaction smacks of fraud[.]

Id. at 749 (internal citations omitted).  Similarly, the Court finds that here, too, nothing in the well-pled factual allegations in the Second Amended Complaint smacks of consumer

fraud.  Rather, the allegations suggest that Plaintiffs were
dissatisfied with the exchange rates they received from TD Bank
and would have preferred to bank elsewhere.  See, e.g., Compl.
¶¶ 69-70 (alleging that OANDA's foreign exchange brokerage
provided more favorable exchange rates compared with TD Bank for
similar transactions).  But "[m]ere customer dissatisfaction
does not constitute consumer fraud." Van Holt, 163 F.3d at 168
(citing Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139
N.J. 392, 655 A.2d 417, 430 (1995)).  Nothing in the well-pled
factual allegations gives rise to a plausible inference of
consumer fraud.

Despite being given the opportunity to amend the pleadings
twice, Plaintiffs' Second Amended Complaint remains fraught with
conclusory allegations that an undisclosed fee was charged.
Even under a relaxed application of Rule 9(b), Plaintiffs'
allegations are insufficient to show Defendant charged an
undisclosed embedded transaction fee.  Similarly, Plaintiffs
have not adequately plead any misleading unlawful conduct on the
part of the Defendant.  For these reasons, Plaintiffs have
failed to sufficiently plead unlawful conduct in violation of
the NJCFA and Plaintiff's NJCFA claim (Count I) will be
dismissed.

## B. Breach of Contract

To establish a breach of contract claim, the Plaintiffs must allege (1) a contract between the parties; (2) a breach of that contract by the Defendant; (3) damages flowing therefrom; and (4) that Plaintiffs performed their own contractual obligations.  Frederico, 507 F.3d at 203; Globe Motor Co. v. Igdalev, -- A.3d --, 2016 WL 3525351, at *6 (N.J. June 29, 2016).[6]  The Court previously dismissed MZL's breach of contract claim, as pled in the Original Complaint, because it did not allege a failure to perform under the BDAA by Defendant TD Bank. 8/18/2015 Opinion at 27.

Plaintiffs attempt to remedy the deficiencies in the Original Complaint by repeatedly alleging in conclusory fashion that TD Bank charges an undisclosed embedded transaction fee on its foreign currency transactions.  For the reasons already set forth above, this Court finds that these allegations are mere conclusions, unsupported by any alleged facts, and, as such, "are not entitled to the assumption of truth."  See Malleus, 641 F.3d at 563 (quoting Iqbal, 556 U.S. at 679).  Therefore, the Court finds, once again, that "Plaintiff[s] ha[ve] not pled facts sufficient to sustain [their] conclusory assertion that

---

[6] The Court notes, once again, that the parties do not dispute that there is no meaningful distinction between New Jersey and New York law with regard to Plaintiffs' breach of contract claim.  See 8/18/2015 Opinion at 26.

Defendant charged a 'fee'; instead, the allegations only state
that the [parties' agreements] stated that the Defendant would
use its applicable exchange rate, and it failed to use the rate
quoted in the Wall Street Journal.  The allegations fail to
demonstrate a breach of contract."  8/18/2015 Opinion at 27.
Accordingly, Plaintiffs' breach of contract claim (Count II)
will be dismissed.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

All contracts in New Jersey contain an implied covenant of
good faith and fair dealing.  Black Horse Lane Assoc., L.P. v.
Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000).[7]  The covenant
operates to ensure that "neither party shall do anything which
will have the effect of destroying or injuring the right of the
other party to receive the fruits of the contract."  Sons of

---

[7] Defendant TD Bank appears not to contest that New Jersey
law applies to Plaintiffs' implied covenant of good faith and
fair dealing claim.  See, e.g., Def. Br. at 14 [Docket No. 32]
(citing New Jersey and Third Circuit law to support argument
that breach implied covenant claim fails); Def. Reply Br. at 5-6
(same).  For the benefit of the parties, however, the Court
notes that Plaintiffs' claim would fail, as a matter of law,
under New York law.  Under New York law, "a claim for breach of
an implied covenant of good faith and fair dealing does not
provide a cause of action separate from a breach of contract
claim." Rehman v. State Univ. of New York at Stony Brook, 596
F. Supp. 2d 643, 659 (E.D.N.Y. 2009) (relying upon Harris v.
Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir.
2002) ("[P]arties to an express contract are bound by an implied
duty of good faith, but breach of that duty is merely a breach
of the underlying contract.")).

Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 690 A.2d 575, 587 (1997).  "The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'"  Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225, 864 A.2d 387 (2005) (quoting 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)); Black Horse, 228 F.3d at 288 ("A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation.").  In addition, "[t]he Supreme Court of New Jersey has clearly held that bad motive is 'essential' to a claim for breach of the implied covenant of good faith and fair dealing." Vasaturo Bros. v. Alimenta Trading-USA, LLC, 2011 WL 3022440, at *5 (D.N.J. July 22, 2011) (citing Wilson v. Amerada Hess Corp., 168 N.J. 236, 251, 773 A.2d 1121 (2001)).

"The implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." Fields v. Thompson Printing Co., 363 F.3d 259, 271 (3d Cir. 2004) (internal citations and quotations omitted).  In essence, "the implied covenant of good faith and

fair dealing may fill in the gaps where necessary to give efficacy to the contract as written," however, it "will not override the contract's express language."  Id. at 271-72.

Plaintiffs' breach of the implied covenant of good faith and fair dealing claim must be dismissed as duplicative of the breach of contract claim.  "[T]he breach of the implied covenant arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner so as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  Wade v. Kessler Inst., 172 N.J. 327, 345, 798 A.2d 1251, 1262 (2002) (quoting Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 129, 351 A.2d 349 (1976)) (emphasis added).  Therefore, where a claim for breach of the implied covenant of good faith and fair dealing is premised upon the same conduct as a breach of contract claim, the claim cannot stand and must be dismissed as duplicative or redundant.  Intervet, Inc. v. Mileutis, Ltd., 2016 WL 740267, at *5 (D.N.J. Feb. 24, 2016); see also Cioni v. Globe Specialty Metals, Inc., 618 F. App'x 42, 45 (3d Cir. 2015) (dismissing breach of implied covenant of good faith and fair dealing claim because it was "unsustainable as a duplication of [plaintiff's] breach of contract claim."); Berlin Med. Associates, P.A. v. CMI New Jersey Operating Corp., 2006 WL 2162435, at *10 (N.J. Super. Ct. App. Div. Aug. 3, 2006)

(affirming dismissal of implied covenant claim as redundant of breach of contract claim).

Plaintiffs' implied covenant of good faith and fair dealing claim is premised upon the exact same conduct as the breach of contract claim, namely that TD Bank allegedly failed to disclose an embedded currency transaction fee.  Compare Compl. ¶ 96 (alleging, in support of breach of contract claim, that "Defendant breached [its] duties by failing to disclose the fee on the BDAA fee annex or its other governing contracts.") with id. at ¶ 98 (alleging, in support of breach of implied covenant claim, that Defendant "breached [its] duties by failing to disclose the embedded foreign currency transaction fee.").  It is, therefore, duplicative of the breach of contract claim and will be dismissed.

Alternatively, even if the breach of the implied covenant claim were not duplicative of the breach of contract claim, the claim would still fail for largely the same reasons as the breach of contract claim.  Plaintiffs have not adequately pled facts that "support a conclusion that the party alleged to have acted in bad faith [TD Bank] has engaged in some conduct that denied [Plaintiffs] the benefits of the bargain originally intended by the parties."  Brunswick Hills, 182 N.J. at 225.  Instead, Plaintiffs well-pled allegations merely establish that TD Bank stated that it would charge its "applicable exchange

28

rate" and that its "applicable exchange rate" was not an objective rate, such as the one published in the Wall Street Journal.  What's more, Plaintiffs have not alleged any facts whatsoever that show that TD Bank acted in bad faith, as required to establish a breach of the implied covenant of good faith and fair dealing.  See Black Horse, 228 F.3d at 288 ("A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation."); Vasaturo, 2011 WL 3022440, at *5 (citing Wilson, 168 N.J. at 251) ("bad motive is 'essential' to a claim for breach of the implied covenant of good faith and fair dealing").  As such, Plaintiffs have failed to allege facts necessary to support their claim for breach of the implied covenant of good faith and fair dealing.

For these reasons, the Court will dismiss the breach of the implied covenant of good faith and fair dealing claim (Count IV).

### D. Consumer Protection Laws of Other States and the District of Columbia

In the final count of the Second Amended Complaint, Plaintiffs assert claims on behalf of a putative class for "[t]he violations of the various state consumer protection acts" and cites, in a string cite, the consumer protection laws of each state and the District of Columbia.  Compl. ¶ 103.  As each

of Plaintiffs' other claims will be dismissed, as set forth
above, Plaintiffs have not sufficiently alleged that they have
suffered injuries themselves.  Therefore, Plaintiffs, once
again, lack standing to pursue this count on behalf of class
members.  J.T. ex rel. A.T. v. Dumont Pub. Sch., 533 F. App'x
44, 48 (3d Cir. 2013) ("'[I]f none of the named plaintiffs
purporting to represent a class establishes' standing, 'none may
seek relief on behalf of himself or any other member of the
class.'") (quoting O'Shea v. Littleton, 414 U.S. 488, 494
(1974)).  "A predicate to a plaintiff's right to represent a
class is his eligibility to sue in his own right.  What he may
not achieve himself, he may not accomplish as a representative
of a class."  Maniscalco v. Brother Int'l Corp. (USA), 2008 WL
2559365, at *8 (D.N.J. June 26, 2008) (internal quotations and
modifications omitted) (quoting Kauffman v. Dreyfus, Inc., 434
F.2d 727, 734 (3d Cir. 1970)).  Accordingly, Count IV of the
Second Amended Complaint, alleging violations of numerous
consumer protections laws on behalf of a putative class, is
dismissed.

**IV.   LEAVE TO AMEND**

Defendant urges this Court to dismiss Plaintiffs' Second
Amended Complaint with prejudice, arguing that amendment would
be futile given that "[t]he legal deficiencies in the [Second
Amended Complaint] are foundational and cannot be cured by

30

further wording changes or variations in the theories
presented." Def. Br. at 16. Defendant also claims that it
would be inequitable to force it to incur further expenses and
resources in defending against what it believes to be meritless
claims. Plaintiffs, naturally, disagree and have requested
further leave to amend, in the event that the Court grants the
instant motion to dismiss.

Federal Rule of Civil Procedure 15(a)(2) provides that
"court[s] should freely give leave [to amend] when justice so
requires." The Supreme Court has held, and the Third Circuit
has reiterated, that while "the grant or denial of an
opportunity to amend is within the discretion of the District
Court, . . . outright refusal to grant the leave without any
justifying reason appearing for the denial is not an exercise of
discretion; it is merely an abuse of that discretion and
inconsistent with the spirit of the Federal Rules." Foman v.
Davis, 371 U.S. 178, 182 (1962); accord In re Burlington Coat,
114 F.3d at 1434.

"[E]ven when a plaintiff does not seek leave to amend, if a
complaint is vulnerable to 12(b)(6) dismissal, a District Court
must permit a curative amendment, unless an amendment would be
inequitable or futile. . . . Dismissal without leave to amend is
justified only on the ground of bad faith, undue delay,
prejudice, or futility." Alston v. Parker, 363 F.3d 229, 235-36

(3d Cir. 2004).  This rule applies with equal, if not greater, force in the context of fraud-based claims subject to the heightened pleading standard set forth in Rule 9(b).  See 5A Wright & Miller, Federal Practice and Procedure § 1300 (3d ed.) ("[I]n most instances, when a motion based on a lack of sufficient particularity under Rule 9(b) is granted, whether or not coupled with a motion to dismiss, it will be with leave to amend the deficient pleading.  Thus, a failure to satisfy Rule 9(b) will not automatically lead to dismissal of the action, let alone one that leads to a judgment on the merits.").

Dismissal with prejudice, however, may be an appropriate exercise of discretion where the court has previously provided the plaintiffs with "a detailed roadmap for curing the deficiencies in their claims" and the plaintiffs still fail to remedy those deficiencies in the amendment.  See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 166 (3d Cir. 2004) (affirming district court's dismissal of second amended complaint with prejudice where district court had previously dismissed first amended complaint with leave to amend and "provided Plaintiffs with a detailed blueprint of how to remedy the defects in their claims" but plaintiffs "utterly failed to comply with the District Court's directives.").

This Court's August 2015 Opinion dismissing the Original Complaint not only thoroughly addressed MZL's allegations, but

also identified the numerous deficiencies therein and permitted
MZL an opportunity to remedy those deficiencies.  For example,
the Court instructed MZL to support its fraud-based claim with
allegations pled with particularity, as required by Rule 9(b).
8/18/2015 Opinion at 12.  The Court also explained to MZL that
merely pleading that TD Bank failed to apply an objective rate,
such as the rate published in the Wall Street Journal, was
insufficient to support its claims because TD Bank was under no
obligation to provide such a rate.  Id. at 15-16.  In this
Court's view, its comprehensive Opinion provided Plaintiffs "a
detailed roadmap for curing the deficiencies in their claims."
Chubb Corp., 393 F.3d at 166.

     In response to the Court's directives, Plaintiff MZL filed
the First Amended Complaint, which the parties appear to have
agreed did not sufficiently remedy the defects of the Original
Complaint.  Then, together with Plaintiff Raic, MZL filed the
Second Amended Complaint, which is at issue here.  The Second
Amended Complaint is Plaintiffs' third bite at the proverbial
apple.  Yet it repeats many, if not most, of the allegations
that the Court already found to be inadequate.  Plaintiffs have
also added numerous allegations about the foreign currency
market generally and about the wrongdoing of other financial
institutions, see, e.g., Compl. ¶ 30 (allegation regarding Bank
of New York Mellon), ¶ 31 (allegation regarding HSBC, Royal Bank

of Scotland, UBS, JP Morgan Chase, and Citibank), which, as this
Court has already noted, are irrelevant to the parties and
specific misconduct alleged in this action.  Finally, Plaintiffs
put forth conclusory and unsubstantiated allegations, made on
information and belief alone, regarding an undisclosed embedded
fee "equivalent to a certain number of basis points [that
Defendant] adds to what should be the appropriate exchange
rate." Id. at ¶¶ 59-60.

Despite having received three opportunities to adequately
plead the claims against TD Bank, Plaintiffs have failed to do
so.  The Court notes, in particular, the "stark absence of any
suggestion by the plaintiffs that they have developed any facts
since the action was commenced, which would, if true, cure the
defects in the pleadings under the heightened requirements"
applicable to fraud-based claims under Rule 9(b) or the pleading
requirements set forth in Iqbal and Twombly.  See Chubb Corp.,
394 F.3d at 164.

The Court recognizes and appreciates Defendant's concerns
regarding futility and prejudice.  The Court, however, is also
cognizant of the severity of dismissal with prejudice.
Accordingly, while the Court will not grant Plaintiffs leave to
amend at this time, it will, out of an abundance of caution,
permit Plaintiffs to submit a motion for leave to file an

34

amended complaint.  This will be Plaintiffs' final opportunity to properly plead their claims.

####    V.    <u>CONCLUSION</u>

For the reasons set forth above, this Court will grant Defendant's Motion to Dismiss.  Plaintiffs, however, will be permitted to submit a motion for leave to file an amended complaint within thirty (30) days from the entry of this Opinion and the accompanying Order.  The Clerk of the Court shall close the file in this matter, without prejudice to reopening the matter upon the timely filing of a motion for leave to file an amended complaint.  An appropriate Order shall issue on this date.


                                        <u>s/Renée Marie Bumb</u>
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: <u>August 5, 2016</u>